1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDRE HALL,

11              Petitioner,                    No. CIV S-09-3216 JAM CHS P

12       vs.

13   GARY SWARTHOUT, Warden,

14              Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16                              I.  INTRODUCTION

17          Petitioner Hall is a state prisoner proceeding pro se with an amended petition for

18   writ of habeas corpus pursuant to 28 U.S.C. §2254.  Petitioner stands convicted of second degree

19   murder with use of a firearm for which he is currently serving a sentence of 17 years to life in

20   state prison.  In the pending petition, petitioner presents a single claim challenging the November

21   20, 2008 decision of the Board of Parole Hearings that he was not suitable for parole.  Based on a

22   thorough review of the record and applicable law, it is recommended that the petition be denied.

23                              II.  BACKGROUND

24          According to the probation officer's report, police were summoned to the

25   residence of the victim, petitioner's estranged wife, on March 4, 1989 at 9:55 a.m.  Petitioner had

26   forcibly entered the apartment and proceeded to assault the victim with his fists.  Two male

1

friends of the victim subdued petitioner and removed him from the apartment.  By the time police officers arrived, petitioner was no longer in the area.  At 11:38 a.m. on the same day, police were again summoned to the victim's residence in response to a shooting.  The victim had sustained four gunshot wounds and was pronounced dead at the scene.

Petitioner's five year old daughter and three year old son were in the apartment, along with a third child.  After seeing her father with a gun and hearing her mother say "Please don't," the five year old took the other two children and hid under a bed in another room.  After she heard gunshots, she came out and found her mother on the floor.

Several other witnesses heard the gunshots and observed petitioner walking away from the apartment.  Petitioner was observed to throw the handgun used to kill the victim onto the roof of a nearby building.  Petitioner fled the state and was arrested some months later in Kansas City, Missouri.  According to petitioner, he was under the influence of alcohol and crack cocaine at the time of the offense.  He was "out of control" and not thinking clearly.

Petitioner was convicted of second degree murder with use of a firearm and sentenced to a term of 17 years to life.  He was received in state prison on January 19, 1991.  His minimum eligible parole date passed on February 6, 2001.  On November 20, 2008, the Board of Parole Hearings ("Board") conducted a subsequent hearing to determine whether petitioner was suitable to be released on parole.  A panel of the Board concluded that petitioner still posed an unreasonable risk of danger to the public, and thus that he was not suitable for parole.

Petitioner challenged the Board's denial of parole as a violation of due process in a petition for writ of habeas corpus to the Los Angeles County Superior Court; his claim was denied in a written decision dated May 13, 2009.  The California Court of Appeal, Second District, and the California Supreme Court likewise denied relief, but without written opinions.

III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States.

1  28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

2  *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

3  Additionally, this petition for writ of habeas corpus was filed after the effective date of, and thus

4  is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v.*

5  *Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).

6  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits

7  in state court proceedings unless the state court's adjudication of the claim:

8          (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
9          determined by the Supreme Court of the United States; or

10         (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
11         State court proceeding.

12  28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

13  *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

14  This court looks to the last reasoned state court decision in determining whether the law applied

15  to a particular claim by the state courts was contrary to the law set forth in the cases of the United

16  States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v.*

17  *Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

18                                    IV.  DISCUSSION

19          Petitioner presents a single ground for relief: that "the Board's decision to deny

20  parole was unsupported by any relevant, reliable evidence in the record that petitioner currently

21  poses an unreasonable risk of danger to society and that it was arbitrary because it did not

22  articulate a ration[al] nexus between the factors relied upon an[d] its conclusion [that petitioner

23  was unsuitable], in violation of petitioner's right to due process of law under the Fourteenth

24  Amendment."

25          The Due Process Clause of the Fourteenth Amendment prohibits state action that

26  deprives a person of life, liberty, or property without due process of law.  A person alleging a due

1  process violation must first demonstrate that he or she was deprived of a protected liberty or

2  property interest, and then show that the procedures attendant upon the deprivation were not

3  constitutionally sufficient.  *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60

4  (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

5          A protected liberty interest may arise from either the Due Process Clause itself or

6  from state laws.  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States

7  Constitution does not, in and of itself, create for prisoners a protected liberty interest in receipt of

8  a parole date.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  If a state's statutory parole scheme

9  uses mandatory language, however, it creates "a presumption that parole release will be granted,"

10  thereby giving rise to a constitutional liberty interest.  *McQuillion*, 306 F.3d at 901 (*quoting*

11  *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).  California's statutory scheme

12  for determining parole for life-sentenced prisoners provides, generally, that parole shall be

13  granted "unless consideration of the public safety requires a more lengthy period of

14  incarceration."  Cal. Penal Code §3041.  This statute gives California state prisoners whose

15  sentences carry the possibility of parole a clearly established, constitutionally protected liberty

16  interest in receipt of a parole release date.  *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007)

17  (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*,

18  334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; *Allen*, 482 U.S. at 377-78

19  (*quoting Greenholtz*, 442 U.S. at 12)).

20          Despite existence of this liberty interest, the full panoply of rights afforded a

21  defendant in a criminal proceeding is not constitutionally mandated in the context of a parole

22  proceeding.  *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme

23  Court has held that a parole board's procedures are constitutionally adequate if the inmate is

24  given an opportunity to be heard and a decision informing him of the reasons he did not qualify

25  for parole.  *Greenholtz*, 442 U.S. at 16.

26  /////

1         Additionally, as a matter of California law, denial of parole to state inmates must

2  be supported by at least "some evidence" demonstrating future dangerousness. *Hayward v.*

3  *Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th

4  616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241

5  (2008)).  "California's 'some evidence' requirement is a component of the liberty interest

6  created" by the state's parole system. *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010).  The

7  federal Due Process Clause requires that California comply with its own "some evidence"

8  requirement. *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam).  Accordingly,

9  the United States Court of Appeals for the Ninth Circuit has held that a reviewing court such as

10  this one must "decide whether the California judicial decision approving the... decision rejecting

11  parole was an "unreasonable application" of the California 'some evidence' requirement, or was

12  "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603

13  F.3d at 562-63.  This analysis is framed by California's own statutes and regulations governing

14  parole suitability determinations for its prisoners. *See Irons*, 505 F.3d at 851.

15         Title 15, Section 2402 of the California Code of Regulations sets forth various

16  factors to be considered by the Board in its parole suitability findings for murderers.  The Board

17  is directed to consider all relevant, reliable information available regarding

18              the circumstances of the prisoner's social history; past and present
               mental state; past criminal history, including involvement in other

19              criminal misconduct which is reliably documented; the base and
               other commitment offenses, including behavior before, during and

20              after the crime; past and present attitude toward the crime; any
               conditions of treatment or control, including the use of special

21              conditions under which the prisoner may safely be released to the
               community; and any other information which bears on the

22              prisoner's suitability for release.

23  15 Cal. Code Regs. §2402(b).  The regulation also sets forth specific circumstances which tend to

24  show unsuitability or suitability for parole:

25              (c) Circumstances Tending to Show Unsuitability. The following
               circumstances each tend to indicate unsuitability for release. These

26              circumstances are set forth as general guidelines; the importance

attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

>   (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner....
>
>   (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
>   (3) Unstable social history. The prisoner has a history of unstable or tumultuous relationships with others.
>
>   (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
>   (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
>   (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

>   (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
>   (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
>   (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
>   (4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
>
>   (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b),

and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

15 Cal. Code Regs. § 2402(c)-(d).

The overriding concern is public safety and the proper focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the applicable standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

In this case, the Board commended petitioner for various achievements during his incarceration including his participation in some self-help therapy, obtaining his GED, and achieving vocational certification in mill and cabinets and as an optician. Nevertheless, the Board concluded that the factors demonstrating petitioner's unsuitability outweighed those tending to demonstrate his suitability.

Specifically, the Board noted and relied on petitioner's offense as well as his misconduct in prison, which included serious misconduct. Petitioner amassed five serious "115" disciplinary reports during incarceration and nine less serious "128" write-ups commonly referred to as "counseling chronos." Petitioner engaged in serious misconduct as recently as 2007, when he received two major disciplinary reports, one for possession of pornographic

photographs and another for possession of contraband (compact discs and/or DVDs).  According

to the most recent psychiatric evaluator, petitioner had "minimized" his conduct relative to these

offenses.  In addition, in 2001, petitioner tested positive for marijuana and was disciplined for

possession of a controlled substance.  The Board noted that despite his prior admitted abuse of

drugs and alcohol, petitioner's participation in NA over the last two years was "sporadic."

Moreover, the most recent psychological evaluator had opined that petitioner still posed a

"moderate" risk of recidivism and that there was a "moderate" likelihood that he would become

involved in a violent offense if released into the free community.

On state habeas corpus review, the Los Angeles County held that the Board's

decision did not violate petitioner's right to due process because it was supported by some

evidence in the record.  The state superior court reasoned:

> The Board based its decision [to deny parole] on several factors,
> including his commitment offense, his previous record of violence,
> his unstable social history, his institutional behavior and his
> psychological report.
>
> The Court finds that there is some evidence to support the Board's
> finding that the offense was especially heinous, atrocious or cruel,
> because it was carried out in a dispassionate and calculated
> manner.  Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(B).
> Although the Petitioner stated that he was in a rage at the time of
> the offense, the record indicates that he left after the initial
> confrontation, retrieved a gun from a friend, returned to the
> apartment and then shot his wife four times.  These actions were
> planned, deliberate, dispassionate and calculated.
>
> After a long period of time, a commitment offense may no longer
> indicate a current risk of danger to society in light of a lengthy
> period of positive rehabilitation.  See *Lawrence*, *supra*, 44 Cal.4th
> at 1211.  However, as discussed below, the Board also considered
> the Petitioner's prior convictions, his unstable social history and
> his institutional behavior and his psychological report.  In cases,
> such as this one, where other factors indicate a lack of
> rehabilitation, the aggravated circumstances of the offense may
> provide some evidence of current dangerousness, even decades
> after it is committed.  *Id*. at 1228.
>
> The Court also finds that there is some evidence to support the
> Board's findings that the Petitioner has a previous record of
> violence and an unstable social history.  Cal. Code Regs., tit. 15,

§2402, subds. (c)(2) and (c)(3).  The Petitioner was previously convicted of attempted robbery, for which he served a two-year prison term prior to the commitment offense.  The record also indicates that he and his wife were estranged because he used most of the money he earned to buy drugs and that she and their children moved into another apartment prior to the commitment offense.  This demonstrates a history of tumultuous relationships with others.

Additionally, the Court finds that there is some evidence to support the Board's finding that the Petitioner's institutional behavior weighs against his suitability.  Cal. Code Regs., tit. 15, §2402, subd. (c)(6).  The Petitioner received five 115 disciplines in prison, including one in 2001 for possession of a controlled substance, after he tested positive for using marijuana and two in 2007 for possession of contraband and possession of pornographic materials.  The Board also noted that the Petitioner has only sporadically participated in substance abuse programs in prison.  Petitioner's somewhat recent drug use in prison, his limited programming related to his substance abuse problem, as well as his continued inability to conform to prison rules weigh against his suitability.

The Board also considered the Petitioner's 2008 psychological report, which indicated that he has an unspecified personality disorder, that he rates in the moderate range for psychopathy, and that he presents a moderate risk for general recidivism and being involved in a future violent offense.  Additionally, the Board considered the Petitioner's lack of a documented relapse prevention program.  While these factors, alone, may not justify a finding of unsuitability, the Board may properly consider them as long as they are relevant to a determination of whether the Petitioner is suitable for parole.  Cal. Code Regs., tit. 15, §2402(b).

The Board also considered the Petitioner's post-conviction gains, including his GED, his vocations in mill and cabinet and eyewear, his six years working in the PIA optical lab with exceptional work reports, and his participation in self-help programs.  However, they still concluded that the Petitioner would pose an unreasonable threat to public safety.  Penal Code §3041(b).  The Court finds that there is some evidence to support this determination because of his commitment offense, in light of his continued substance abuse and inability to conform to rules in prison, his sporadic substance abuse programming participation, as well as his psychological report, which are some evidence of a current risk of danger to society.

...

Accordingly, the petition is denied.

(*In re Andre Hall*, No. BH 005860 at 2-3 (Los Angeles Co. Superior Ct, May 13, 2009).)

1    The state superior court properly considered the overarching consideration for

2   parole suitability, which is petitioner's current or future dangerousness, and it's resulting

3   determination that petitioner still posed an unreasonable risk of danger is supported by some

4   evidence in the record.  Accordingly, the state court decision upholding the Board's denial of

5   parole is not contrary to, or an unreasonable application of Supreme Court precedent, nor based

6   on an unreasonable determination of the facts in light of the evidence.  At a minimum, the

7   circumstances of petitioner's commitment offense, combined with his serious misconduct in

8   prison and the unfavorable psychological report constitute some evidence to support the Board's

9   2008 denial of parole.

10                              V.  CONCLUSION

11    For the foregoing reasons, IT IS HEREBY RECOMMENDED that the application

12   for writ of habeas corpus be DENIED.

13    These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

15   one days after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18   shall be served and filed within seven days after service of the objections.  Failure to file

19   objections within the specified time may waive the right to appeal the District Court's order.

20   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

21   1991).

22    DATED: October 1, 2010

23                                                      CHARLENE H. SORRENTINO
                                                        UNITED STATES MAGISTRATE JUDGE

24

25

26

                                            10